UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA TORRES,<br><br>         Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>         Defendant. | ) Case No.: ED CV 13-1345-PJW<br>)<br>)<br>)<br>) MEMORANDUM OPINION AND ORDER<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I.   INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  She claims that the Administrative Law Judge ("ALJ") erred when she: (1) found that Plaintiff was not credible, (2) rejected the treating doctors' opinions, and (3) relied on the vocational expert's testimony.  For the reasons explained below, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

## II.  SUMMARY OF PROCEEDINGS

In December 2010, Plaintiff applied for SSI and DIB, alleging that she was disabled due to carpal tunnel syndrome, tendinitis, and headaches. (Administrative Record ("AR") 152-60, 170.) The Agency denied the applications initially and on reconsideration. Plaintiff then requested and was granted a hearing before an ALJ. (AR 84-88.) On February 27, 2012, she appeared with counsel and testified at the hearing. (AR 35-64.) The ALJ subsequently issued a decision denying benefits. (AR 16-29.) Plaintiff appealed to the Appeals Council, which denied review. (AR 4-11.) She then commenced this action.

## III.  ANALYSIS

### A. The ALJ's Credibility Determination

Plaintiff testified, in essence, that she experienced such severe pain in her arms, hands, and body that she was unable to work. The ALJ rejected this testimony for a number of reasons. For the following reasons, the Court finds that she erred in doing so.

ALJs are responsible for judging the credibility of witnesses, including the claimants. In making these determinations, they can rely on ordinary credibility evaluation techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). But, where a claimant has produced medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, an ALJ may only reject the claimant's testimony for specific, clear, and convincing reasons, *id.* at 1283-84, that are supported by

substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ cited a number of reasons for questioning Plaintiff's testimony. She noted that Plaintiff "engaged in a somewhat normal level of daily activity," including driving, shopping, attending her daughter's school meetings, and occasionally eating out in restaurants, and concluded that this undermined her testimony that her pain precluded her from working. (AR 21.) Though the record supports the ALJ's finding that Plaintiff performed these activities, the Court does not agree with the ALJ that her ability to perform them undermined her testimony that she could not work. They are relatively brief, non-strenuous activities that do not establish that Plaintiff was lying when she claimed that she could not work full time. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Further, the ALJ failed to explain how Plaintiff's ability to drive, for example, translated into an ability to work full time. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (holding ALJ errs in failing to explain how ability to perform daily activities translated into ability to perform work).

The ALJ also relied on the fact that Plaintiff seemed to contradict herself when she testified that she had no trouble walking but also testified that she could no longer walk one-

half mile two to three times a week because of pain. (AR 21.) Though the ALJ is entitled to rely on inconsistencies in a claimant's testimony in evaluating her credibility, the transcript does not support the ALJ's finding that Plaintiff contradicted herself. She testified that she generally had no problem walking but added that "it depends on the distance." (AR 58.) On the next page of the transcript, she testified that she used to walk one-half mile with her husband two to three times a week but had stopped because of the pain. (AR 59.) The Court does not interpret the testimony as contradictory.

The ALJ found that Plaintiff's testimony that she was fatigued was contradicted by her testimony that she took naps for four to six hours on certain days and still slept through the night. (AR 21.) The Court does not see these statements as contradictory, either. In fact, it seems to support Plaintiff's testimony that she suffers from fatigue and that is why she naps during the day.

The ALJ next focused on the objective medical evidence and found that it did not support Plaintiff's testimony. She looked at, for example, the fact that Plaintiff had a full range of motion in her right elbow even though she claimed that she suffered from pain in her right arm and hand. (AR 21.) The Court does not find this to be a persuasive reason for questioning Plaintiff's testimony as none of the doctors opined that a full range of motion in her elbow was inconsistent with her claim that she suffered from pain in her arm and hand.

The Court has the same reaction to the ALJ's discussion about atrophy. Without citation, the ALJ reported that atrophy

is "a common side effect of prolonged and/or chronic pain due to lack of use of a muscle to avoid pain." (AR 21.) The ALJ then pointed out that the examining doctor had not detected any atrophy and surmised that the lack of atrophy indicated that Plaintiff was exaggerating her claims of severe pain. (AR 21.) The problem with this finding is that it is premised on the ALJ's medical conclusion that absence of atrophy establishes regular use of the limb. Though this makes sense, the ALJ cannot rely on her own medical expertise to draw this inference from the evidence.

The ALJ concluded that Plaintiff's treatment was conservative and that this indicated a lack of candor. (AR 21.) Again, while the Court would agree that, generally speaking, a claimant's decision to treat a condition conservatively is a valid reason for questioning a claimant's testimony, it disagrees with the ALJ's characterization of Plaintiff's treatment as conservative. Plaintiff received extensive treatment to resolve her carpal tunnel syndrome and other maladies in her wrists and arms, including three surgeries that required her to undergo general anesthesia. She also received cortisone shots, physical therapy, and numerous types of pain medications, including narcotics like Vicodin. The Court does not find this treatment to be conservative nor is there anything in the record to suggest that a more aggressive treatment was called for and that Plaintiff chose to simply forgo it.

Thus, in the end, the Court finds that the reasons proffered by the ALJ for discounting Plaintiff's testimony are not valid. The issue that remains is whether the Court should

credit Plaintiff's testimony as true and reverse the ALJ's decision or remand the case to the Agency for further consideration of the credibility issue. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court concludes that remand is warranted because it is not clear from the record whether Plaintiff's ailments and the pain caused by them preclude her from performing all work, thus triggering her entitlement to benefits. *See Connett v.* Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (holding "credit as true" doctrine not mandatory and remanding case to Agency for reconsideration of credibility issue). As Plaintiff testified, she has no problem sitting and probably would not have any problem standing. (AR 58-59.) And, according to Plaintiff, she can lift five pounds with her right hand and ten with her left. (AR 58.) Thus, even based on her testimony, it appears that there might be jobs that she could perform in the workplace. For that reason, the issue is remanded to the Agency to allow the ALJ to decide anew whether Plaintiff's testimony is credible and whether she can work.

B. The ALJ's Analysis of the Doctors' Opinions

The ALJ relied primarily on the examining doctor's opinion to conclude that Plaintiff was capable of working and was not disabled. Plaintiff complains that the ALJ erred in doing so and should have relied, instead, on her treating doctors' opinions that she was more limited. For the following reasons, the Court concludes that further development of this issue is necessary.

ALJs are tasked with resolving conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally speaking, three types of doctors supply that evidence: treating doctors, examining doctors, and reviewing doctors. All things being equal, treating doctors' opinions are entitled to the greatest weight because they are hired to cure and have more opportunity to know and observe the patient. *Id.* at 1041; *see also* 20 C.F.R. 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations"). Examining doctors are next on the list, followed by reviewing doctors. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). ALJs, however, are not required to merely accept the opinion of any doctor and, where the opinion is contradicted, may reject it for specific and legitimate reasons that are supported by substantial evidence in the record. *Id*. at 830.

When Plaintiff's ailments caused her to stop working, she filed a workers' compensation action. One of her treating doctors, Dr. Birnbaum, served as her worker's compensation doctor. Plaintiff submitted records from Dr. Birnbaum and the other doctors who examined or treated her in connection with her workers' compensation case in support of her claim for disability in this case. Ultimately, the ALJ did not rely on these doctors' opinions and relied, instead, on the opinion of

the examining physician, Dr. Sophon.  In explaining why, the ALJ began with her general assessment of doctors in the workers' compensation arena:

> [P]hysicians retained by either party in the context of workers' compensation cases are often biased and do not provide truly objective opinions.  The claimant's treating physician in the context of a workers' compensation claim often serves as an advocate for the claimant and describes excessive limitations to enhance the claimant's financial recovery.

(AR 22.)

The ALJ then went on to explain that "disability" under workers' compensation law is different from "disability" under Social Security law and concluded that, therefore, "the credibility of and relevance of the opinions of these physicians must be carefully assessed because of the involvement with the workers' compensation claim."  (AR 22.)

The ALJ's focus on the fact that Plaintiff's treating doctors were employed by Plaintiff in connection with her workers' compensation case is clearly contrary to binding Ninth Circuit case law and is rejected.  In *Lester*, the circuit made clear that the Agency is not allowed to discount a doctor's opinion simply because it was procured by a claimant in connection with litigation and the ALJ suspects that the doctor was biased as a result:

> In rejecting the examining psychologist's opinion, the ALJ considered it to be significant that his reports "were clearly obtained by the claimant's attorney for the purpose

of litigation." The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner. *Ratto v. Secretary,* 839 F. Supp. 1415, 1426 (D. Or. 1993). As the *Ratto* court stated: "The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Id.*

*Lester*, 81 F.3d at 832.

Thus, the ALJ's implication that Plaintiff's treating doctors' opinions were suspect because Plaintiff hired them in connection with her workers' compensation case is rejected.[1]

The Court also takes exception to the ALJ's decision to rely on the examining doctor's opinion because it was not contradicted by any of the other opinions. (AR 25.) If that is the case, then, all things being equal, the ALJ should have relied on the treating doctors' opinion, since they, too, would have to have been uncontradicted. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Lester,* 81 F.3d at 830. Where the treating doctor's opinion is not contradicted by another doctor,

---

[1] The Court finds it ironic that the ALJ is uncomfortable relying on the treating doctors because they were paid by Plaintiff but is willing to rely on the examining doctor who was paid by the Agency. If the ALJ believes that doctors are inclined to offer opinions that are consistent with the views of the person who pays them, then the examining doctor's opinion should have been equally suspect.

it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record.  *Id.*  (internal quotation marks omitted).").

   The ALJ also discounted the treating doctors' opinions because, contained within them, were the doctors views on disability, an issue reserved to the ALJ.  (AR 25-26.)  The ALJ erred here, too.  She was not at liberty to simply disregard the doctors' entire opinion because, in the context of the worker's compensation case, the doctor determined that Plaintiff was disabled, which is, apparently, what doctors do in workers' compensation cases.  *See Orn v. Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007) (explaining, even if treating doctor's opinion is not entitled to controlling weight, it must still be considered by ALJ); *see also Holohan v. Massanari*, 246 F.3d 1195, 1203 (9th Cir. 2001) (holding treating doctor's controverted opinion on ultimate issue of disability must be credited unless it can be rejected for specific and legitimate reasons).

   Thus, none of the reasons offered by the ALJ for discounting the treating doctors' opinions are valid.  The Court is again faced with the choice of remanding the case for further consideration or reversing the ALJ's decision and remanding for an award of benefits.  *See, e.g., Lester,* 81 F.3d at 834 ("Where the [ALJ] fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter of law.").  Here, again, the Court finds that remand is appropriate because it is not clear from the record, even accepting the treating doctors' opinions at face

value, that Plaintiff is disabled under Social Security law. *See Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1137 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be."). This is primarily because the language used by the workers' compensation doctors is not readily transferable to Social Security proceedings. And, though Plaintiff's counsel attempted to translate the reports for the Court (Joint Stip. at 20-21), it is still not clear based on these doctors' reports whether Plaintiff is disabled under Social Security law. For that reason, the Court finds that the more prudent course is to let the ALJ, with the help of Plaintiff's counsel, translate these reports in the first instance and determine whether Plaintiff is disabled under the law.[2]

C. <u>The Vocational Expert's Testimony</u>

Plaintiff's final ground for appeal is that the ALJ failed to question the vocational expert about how Plaintiff's various limitations would impact her ability to perform jobs identified by the vocational expert. This issue, too, is remanded for further consideration. On remand, the ALJ should determine the

---

[2] For example, Dr. Birnbaum determined at the end of his treatment of Plaintiff that she was temporarily totally disabled for four weeks. (AR 404.) Obviously, even crediting this opinion as true, it would not be enough to establish that Plaintiff was disabled under Social Security law because the law requires a showing of disability for at least twelve months. The same holds true for Dr. Cook's report. (AR 560-631.) He did not conclude that Plaintiff could not work. Rather, he restricted her from work involving repetitive or forceful use of her hands and arms. (AR 601.)

full extent of Plaintiff's limitations by readdressing the medical evidence and Plaintiff's testimony and then questioning the vocational expert about what, if any, jobs Plaintiff can still perform despite her limitations.

## IV. CONCLUSION

For these reasons, the ALJ's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED:  November 7, 2014

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\TORRES\Memo Opinion and Order.docx